No. 2--02--0487       

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Du Page County.

)

Plaintiff-Appellee, ) 

)

v. ) No. 01--CF--1302

)

MICHAEL R. PECO, ) Honorable

) Mark W. Dwyer,

Defendant-Appellant. ) Judge, Presiding.

______________________________________________________________________________

JUSTICE GROMETER delivered the opinion of the court:

Defendant, Michael R. Peco, was found guilty after a bench trial in the circuit court of Du Page County of attempted residential burglary (720 ILCS 5/8--4, 19--3(a) (West 2000)).  The court sentenced defendant to a term of 14 years' imprisonment.  On appeal, defendant argues that he was deprived of his statutory right to a speedy trial (725 ILCS 5/103--5(a) (West 2000)).  We affirm.

Defendant was arrested on May 7, 2001.  On May 9, 2001, defendant was charged with attempted residential burglary (720 ILCS 5/8--4, 19--3(a) (West 2000)).  On the same date, defendant was remanded to the sheriff of Du Page County in lieu of bond and given a court date of June 4, 2001.  On May 31, 2001, defendant was indicted on one count of attempted residential burglary (720 ILCS 5/8--4, 19--3(a) (West 2000)).  On June 4, 2001, defendant appeared in court for arraignment, and the trial court appointed a public defender to represent defendant.  The court ordered the parties to provide discovery and continued the matter until June 27, 2001.  The written discovery order entered on that date contains a notation stating, "speedy tolled (once disclosure is tendered)."  The State filed its discovery disclosure on June 13, 2001.  The case was continued from time to time between June 27, 2001, and November 7, 2001.

On November 7, 2001, defense counsel advised the trial court that her client "is asking at this time that this be set for bench trial."  The State asked the court to set trial for January 7 or 8, 2002.  Defense counsel responded that her client "would like the soonest date possible," but that she "understand[s] the schedule of the State."  Ultimately, the court offered a trial date of January 9, 2002, and defense counsel responded, "[t]hat would be fine."  The written order setting trial for January 9, 2002, included boxes to indicate whether the continuance should be attributed to defendant, the State, or the court.  The order also included a box to indicate that the speedy-trial term was tolled.  None of these boxes was checked.

On December 31, 2001, the State filed a motion to continue the trial on the basis that a material witness for the prosecution would be unavailable for the scheduled trial date.  Attached to the motion was an affidavit from the prosecutor attesting that the witness was out of state but would be available on or after January 24, 2002.  At the January 3, 2002, hearing on the State's motion, the prosecution requested a trial date in the first or second week of February.  The court granted the State's motion and rescheduled the trial to February 13, 2002.  When asked whether the continuance was on the State's motion, the prosecutor responded in the affirmative.  After introducing herself for the record, defense counsel said nothing during the hearing, except to confirm that the matter would be a bench trial and to thank the court at the conclusion of the hearing.  The written order entered on January 3, 2002, indicated that the continuance was on the State's motion.  However, the box indicating whether the speedy-trial term was tolled was not checked.

On February 13, 2002, defense counsel filed a motion for continuance resulting from an obligation related to another case.  At the hearing on the motion, defendant stated that his "speedy trial has been running in this case" and expressed opposition to any continuance.  Defendant informed the court that he asked his public defender about being represented by another attorney from her office if she was unavailable.  Defendant also stated that he was "ready today to proceed with or without the Public Defender's Office."  The State noted that defendant had not previously made a speedy-trial demand and asked defendant whether he was then making such a demand.  The court then told defendant that he "can put whatever motion [he] wish[es] in writing," but that it was granting defense counsel's motion and continuing the cause to March 20, 2002. The court also informed defendant that the delay was attributable to the defense.  Defendant replied, "I make the demand today," and he filed a written demand for speedy trial.

On March 20, 2002, before the commencement of defendant's bench trial, defense counsel informed the court that defendant had prepared a 
pro se
 motion to dismiss on speedy-trial grounds. Defense counsel then informed the court that she had "looked into that issue," but believed it was without merit.  Initially, the trial court allowed defendant to file the motion.  The court then asked defendant whether he wished to represent himself at trial.  Defendant responded, "[o]h no.  Not today."

The prosecutor questioned whether it was proper for defendant to file the 
pro se
 motion given that he was represented by counsel.  
The State also argued that since a speedy-trial demand was not filed until February 13, 2002, defendant's motion was without merit.  The court then stated that it would not entertain defendant's 
pro se
 motion while he was represented by the public defender.  We note that the record does not contain a copy of defendant's motion.  The court added:

"And also for the record, I also reviewed the court file when [defendant] raised the speedy [
sic
] on the last court date.

And I reviewed the file that the Court keeps on each case, and I show that up until January 3rd, every date was on the Defendant's motion or by agreement; okay?"

The matter then proceeded to a bench trial at which the court found defendant guilty of attempted residential burglary (720 ILCS 5/8--4, 19--3(a) (West 2000)).  

On April 19, 2002, defense counsel filed a motion for a new trial.  The motion did not contain any allegation regarding the speedy-trial issue.  On April 25, 2002, the trial court denied defendant's posttrial motion.  Following defendant's sentencing hearing, the trial court imposed a term of 14 years' imprisonment.  The court also entered an unsatisfied civil judgment order against defendant in the amount of $1,500 for the damages resulting from the offense of which he was convicted.

Defendant filed a timely appeal, arguing that his statutory right to a speedy trial (725 ILCS 5/103--5(a) (West 2000)) had been violated.  As a preliminary matter, the State argues that defendant waived review of the speedy-trial issue by failing to argue it in his posttrial motion.  
An examination of the record in this case confirms that defendant failed to properly preserve this issue for appellate review.  
Accordingly, we agree that defendant has waived this issue.  
People v. Mayo
, 198 
Ill. 2d 
530, 535 n.1 (2002) (noting that the failure to raise an issue in a posttrial motion normally results in waiver); 
People v. Kuntu
, 196 
Ill. 2d
 105, 134-35 (2001) (same).

Defendant urges, however, that even if the speedy-trial issue has been waived, we should consider the merits of his claim for two reasons.  First, defendant argues that his attorney's failure to raise the issue in a posttrial motion resulted in ineffective assistance of counsel.  Second, he asserts that the failure to raise the speedy-trial issue in his posttrial motion is reviewable as plain error under Supreme Court Rule 615(a) (134 
Ill. 2d
 R. 615(a)).

We turn first to defendant's claim of ineffective assistance of counsel.  To determine whether a defendant was denied the effective assistance of counsel, we apply the two-prong test developed by the Supreme Court in 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), and adopted by our supreme court in 
People v. Albanese
, 104 
Ill. 2d
 504, 526 (1984).  To prevail on a claim of ineffective assistance of counsel, the defendant must show both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced defendant such that he was deprived of a fair trial.  
Strickland
, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

It is well settled that the failure of counsel to move for the discharge of his client on the basis of a speedy-trial violation will constitute ineffective assistance of counsel when there is at least a reasonable probability that the client would have been discharged had a timely motion been filed and there was no justification for the attorney's decision not to file a motion.  
People v. Cooksey
, 309 
Ill. App. 3d
 839, 844 (1999); 
People v. Plair
, 292 
Ill. App. 3d
 396, 398 (1997); 
People v. Garcia
, 251 
Ill. App. 3d
 473, 478-79 (1993).  In addition, the failure of trial counsel to file a posttrial motion raising a specific issue may form the basis for an ineffective assistance of counsel claim.  See
 
People v. Mick
, 86 
Ill. App. 3d
 1022, 1027-28 (1980) (noting that trial counsel's failure to raise issue in posttrial motion constitutes ineffective assistance where it is demonstrated that the failure to address the issue affected the defendant's conviction); see also 
People v. Feazell
, 248 
Ill. App. 3d
 538, 544-45 (1993).  Thus, it necessarily follows that the failure of defense counsel to argue a speedy-trial violation in a posttrial motion will also constitute ineffective assistance where there is at least a reasonable probability that the client would have been discharged had the issue been addressed in the posttrial motion and there was no justification for counsel's decision not to raise the issue.  We caution, however, that the failure of counsel to argue a speedy-trial violation in a posttrial motion cannot satisfy either prong of 
Strickland
 where there is no lawful basis for arguing a speedy-trial violation.  See 
Cooksey
, 309 
Ill. App. 3d
 at 844; 
Garcia
, 251 
Ill. App. 3d
 at 479.  Accordingly, a determination whether defendant was deprived of the effective assistance of counsel necessarily entails an examination of the merits of his speedy-trial-violation claim.  
Garcia
, 251 
Ill. App. 3d
 at 479.

Following defendant's arrest, defendant remained in custody and was never released on bond.  Section 103--5(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/103--5(a) (West 2000)) governs an in-custody defendant's statutory right to a speedy trial.  It provides:

"(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant, by an examination for fitness ordered pursuant to Section 104--13 of this Act, by a fitness hearing, by an adjudication of unfitness to stand trial, by a continuance allowed pursuant to Section 114--4 of this Act after a court's determination of the defendant's physical incapacity for trial, or by an interlocutory appeal.  Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record."  725 ILCS 5/103--5(a) (West 2000).

The last sentence of the paragraph cited above was added to section 103--5(a) in 1999.  See Pub. Act 90--705, eff. January 1, 1999 (amending 725 ILCS 5/103--5(a) (West 1996)).  As noted previously, defendant was arrested on May 7, 2001, and his trial began on March 20, 2002.  Thus, 317 days elapsed between the date defendant was taken into custody and the commencement of his trial.  If more than 120 of these days are attributable to the State, defendant's statutory right to a speedy trial has been violated.

Courts interpreting section 103--5(a) prior to the language added by Public Act 90--705 have uniformly held that the 120-day speedy-trial period begins to run automatically, without a formal demand for trial, from the day a defendant is taken into custody.  
Mayo
, 198 
Ill. 2d
 at 536; 
People v. Kliner
, 185 
Ill. 2d
 81, 114-15 (1998); 
Cooksey
, 309 
Ill. App. 3d
 at 843; 
Plair
, 292 
Ill. App. 3d at 
398; 
People v. Sojak
, 273 
Ill. App. 3d
 579, 582 (1995); 
Garcia
, 251 
Ill. App. 3d
 at 476.  However, our supreme court has not yet had the occasion to interpret the effect of Public Act 90--705 on section 103--5(a) (see 
People v. Ladd
, 185 
Ill. 2d 602, 613-14 (1999) (declining to address the effect of Public Act 90--705 on section 103--5(a))), and our research has not uncovered any other published case addressing the impact of the amendment
.  T
he State urges that the language added to section 103--5(a) by Public Act 90--705 requires an in-custody defendant to make an oral or written demand for a speedy trial before the 120-day period commences.  We disagree.

Resolution of this issue involves a question of statutory construction.  The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature.  
People v. Redmond
, 328 
Ill. App. 3d
 373, 376-77 (2002).  The most reliable indicator of legislative intent is the plain language of the statute itself.  
Redmond
, 328 
Ill. App. 3d
 at 377.  The statute should be read as a whole, considering all relevant provisions together.  
People v. Olsson
, 335 
Ill. App. 3d
 372, 374 (2002).  Moreover, the statute should be construed so that no word or phrase is rendered meaningless or superfluous.  
Kraft, Inc. v. Edgar
, 138 Ill. 2d 178, 189 (1990).  Where the language of a statute is clear and unambiguous, it is given effect without resort to other aids of 
statutory construction.  
In re Estate of Weiland
, 338 
Ill. App. 3d
 585, 602 (2003).

Here, by requiring an in-custody offender to be tried "within 120 days 
from the date he was taken into custody
" (emphasis added) (725 ILCS 5/103--5(a) (West 2000)), the legislature plainly and unambiguously voiced its intention that the 120-day speedy-trial period run automatically, without a formal demand for trial, from the day a defendant is taken into custody.  Adopting the State's position would render this language meaningless.  See 
People v. Rodriguez
, 339 
Ill. App. 3d
 677, 681 (2003) ("[A] court should avoid an interpretation of a statute that would render any portion of it meaningless or void").  Our conclusion is also supported by an examination of section 103--5 as a whole.  Notably, section 103--5(b) expressly provides that the speedy-trial period begins to run for a person on bail or recognizance "within 160 days 
from the date defendant demands trial
."   (Emphasis added.)  725 ILCS 5/103--5(b) (West 2000).  Had the legislature intended an in-custody defendant to expressly demand trial prior to the commencement of the speedy-trial period, it would have expressly so provided as it did in subsection (b).  We agree with defendant that the purpose of the language added by Public Act 90--705 is to aid courts in determining to whom certain delays shall be attributed once the speedy-trial period begins to run.  Thus, we conclude that the 120-day term for an in-custody defendant begins to run as soon as the defendant is taken into custody. 

We now must determine whether defendant was tried within 120 days.  It is the State's duty to bring the defendant to trial within the statutorily mandated period.  
Mayo
, 198 
Ill. 2d
 at 536.  The speedy-trial period is suspended during any delay occasioned by the defendant (725 ILCS 5/103--5(f) (West 2000); 
People v. Izquierdo-Flores
, 332 
Ill. App. 3d
 632, 636 (2002)), and the defendant bears the burden of affirmatively establishing a speedy-trial violation by showing that the delay was not attributable to his own conduct (
Cooksey
, 309 
Ill. App. 3d
 at 843).  A delay is occasioned by or attributable to the defendant when the defendant's acts caused or contributed to the delay resulting in the postponement of trial.  
Cooksey
, 309 
Ill. App. 3d
 at 843.  Defense counsel's express agreement to a continuance may be considered an affirmative act contributing to a delay that is attributable to the defendant.  
Kliner
, 185 
Ill. 2d
 at 114.  Moreover, "[d]elay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record."  725 ILCS 5/103--5(a) (West 2000).  A defendant not tried within the statutory period shall be discharged from custody and have the charges dismissed.  725 ILCS 5/103--5(d), 114--1(a)(1) (West 2000); 
Mayo
, 198 
Ill. 2d
 at 536; 
Ladd
, 185 
Ill. 2d
 at 607.  The trial court's determination as to who is responsible for a delay of the trial is entitled to much deference and should be sustained absent a clear abuse of discretion.  
Kliner
, 185 
Ill. 2d 
at 115.  Here, the trial court determined that "up until January 3rd, every date was on the Defendant's motion or by agreement."

In reviewing a speedy-trial claim, a court is required to examine both the transcript of proceedings and the common-law record to do justice to both the State and the defendant.  
Mayo
, 198 
Ill. 2d
 at 536.
  In this case, the speedy-trial period began to run on May 7, 2001, the date defendant was arrested and taken into custody.  After defendant's arrest, he remained in custody and was never released on bond.  The next significant hearing occurred on June 4, 2001.  On that date, the trial court ordered the parties to provide discovery and continued the matter until June 27, 2001.  The written discovery order entered on that date contains a notation stating "speedy tolled (once disclosure is tendered)."  The State filed its discovery disclosure on June 13, 2001.  Thus, the period from May 7, 2001, to June 13, 2001, a total of 37 days, is chargeable to the State.  It is not entirely clear from the record whether the trial court's finding that "up until January 3rd, every date was on the Defendant's motion or by agreement" related back to this period of time.  To the extent that it did, we conclude that the trial court abused its discretion in charging this delay to defendant.  Once the State tendered disclosure, however, the speedy-trial period was tolled.  Thus, the period from June 14, 2001, to June 27, 2001, is chargeable to defendant.  Between June 27, 2001, and November 7, 2001, the case was continued from time to time.  All of the written orders entered during that time period indicate that the continuances were on defendant's motions and that the speedy-trial period was tolled.  Thus, the speedy-trial period did not run between June 14 and November 7, 2001.

The disputed period is from November 7, 2001, to January 3, 2002.  The record shows that on November 7, 2001, defense counsel advised the trial court that her client "is asking at this time that this be set for bench trial."  The State asked the court to set trial for January 7 or 8, 2002.  Defense counsel responded that her client "would like the soonest date possible," but that she "understand[s] the schedule of the State."  Ultimately, the court offered a bench trial date of January 9, 2002, and defense counsel responded, "[t]hat would be fine."  The written order setting the matter for a bench trial on January 9, 2002, is silent regarding to whom the delay is attributable and whether the speedy-trial period was tolled.

On December 31, 2001, the State filed a motion to continue the trial on the basis that a material witness for the prosecution would be unavailable for the scheduled trial date.  At a hearing on January 3, 2002, the State argued its motion, requesting a trial date in the first or second week of February.  The court granted the State's motion and rescheduled the trial for February 13, 2002.  When asked whether the continuance was on the State's motion, the prosecutor responded in the affirmative.  After introducing herself for the record, defense counsel said nothing during the hearing, except to confirm that the matter would be a bench trial and to thank the court at the conclusion of the hearing.  The written order entered on January 3, 2002, indicates that the continuance was on the State's motion.  However, the box indicating that the speedy-trial term was tolled was not checked.

Defendant argues that defense counsel's request on November 7, 2001, that the case be set for trial on "the soonest date possible" amounted to "an oral demand for trial on the record" within the meaning of section 103--5(a) of the Code and demonstrated that he did not agree to any continuance.  The State counters that the period from November 7, 2001, to January 3, 2002, is attributable to defendant, because the parties agreed to the continuance.  The State notes that while defense counsel requested "the soonest date possible," she acknowledged that the schedule of the State might preclude an immediate trial.  In addition, the State points out that once the trial court suggested a date, defense counsel responded, "that's fine."  In support of its argument that defense counsel's conduct on November 7, 2001, constituted an agreement to the continuance, the State cites 
Kliner
, 185 
Ill. 2d
 at 117-18,
 and 
Cooksey
, 309 
Ill. App. 3d
 at 845.  Although we find the authority cited by the State inapposite, we ultimately agree that the period from November 7, 2001, to January 3, 2002, is not chargeable to the State.

In 
Kliner
, our supreme court held that defense counsel's reply, " 'that would be just fine,' " to a continuance constituted an express agreement to the continuance.  
Kliner
, 185 
Ill. 2d 
at 117-18.  The 
Cooksey
 court held that defense counsel's statement, " '[y]es, Judge.  That's fine[,]' " indicated that the continuance was "by agreement."  
Cooksey
, 309 
Ill. App. 3d 
 at 845.  However, in 
Kliner
, the continuance was granted in part to resolve a defense motion.  
Kliner
, 185 
Ill. 2d 
at 117-18.  In 
Cooksey
, the continuance was granted to allow the defendant additional time to prepare a motion.  
Cooksey
, 309 
Ill. App. 3d
 at 845.  In this case, the continuance was granted upon the State's request.  Thus, the State's reliance on 
Kliner
 and 
Cooksey
 is misplaced.

Nevertheless, section 103--5(a) of the Code now states that "[d]elay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record."  725 ILCS 5/103--5(a) (West 2000).  As discussed previously, the order entered on November 7, 2001, setting the matter for trial on January 9, 2002, is silent regarding to whom the delay should be attributed.  Furthermore, the order does not indicate that the speedy-trial period was tolled and there is no written demand for trial on record for the court date in question.  Thus, in order for the period to be attributable to the State, defendant must have made an oral demand for trial.  Our research has disclosed no case law interpreting what constitutes an "oral demand for trial" for purposes of section 103--5(a).  However, we find instructive case law interpreting section 103--5(b).

Section 103--5(b) is the companion provision to section 103--5(a) and requires an individual on bail or recognizance to be tried within 160 days "from the date defendant demands trial."  Our supreme court has determined that this provision does not require a defendant to invoke the protections of the speedy-trial statute in any particular form.  
People v. Huff
, 195 
Ill. 2d
 87, 92 (2001).  Moreover, while no magic words are required to constitute a speedy-trial demand, there must be some affirmative statement requesting a speedy trial in the record and the demand 
should not be disguised in ambiguous language.  
People v. Coleman
, 50 
Ill. App. 3d
 40, 42 (1977).

In this case, defendant urges that statements made by defense counsel at the November 7, 2001, hearing constituted an oral demand for speedy trial.  At that hearing, defense counsel advised the trial court that her client "is asking *** that this be set for bench trial."  Defense counsel later indicated that her client "would like the soonest date possible."  We do not construe these remarks as a request for a speedy trial.  Requesting trial at the earliest possible date does not necessarily invoke a defendant's right to a speedy trial.  Here, defense counsel's remarks did not contain any affirmative statement indicating defendant's intention to invoke his right to a speedy trial.  Instead, the remarks merely informed the court that defendant wanted to schedule his trial as soon as possible.  See 
People v. Althide
, 71 
Ill. App. 3d
 963, 966-67 (1979) (rejecting proposition that request for a jury trial constitutes a speedy-trial demand); 
People v. Jenkins
, 65 
Ill. App. 3d
 305, 306 (1978) (holding that defense counsel's statement that defendant was " 'ready for trial' " did not constitute a demand for trial); 
Coleman
, 50 
Ill. App. 3d
 at 41 (holding that defense counsel's statement " 'we're ready and willing to go to trial' " and " 'I think it would be a speedy trial if it were held next Wednesday' " were insufficient to invoke the provisions of the speedy-trial statute); 
People v. Wyatt
, 47 
Ill. App. 3d
 686, 688 (1977) (holding that defendant's "adamant" objection to any further continuances did not constitute a demand for trial)
.  But see 
People v. Moore
, 99 
Ill. App. 3d
 664, 667 (1981) (ruling that defense's counsel's statement that defendant was ready for trial constituted a demand for speedy trial where the record showed that the trial court construed the request as a demand for trial and the State failed to object to trial court's interpretation).

Because the record does not contain an objection in the form of an oral or written demand for trial as required by section 103--5(a) of the Code, we conclude that defendant agreed to the delay for the period from November 7, 2001, to January 3, 2002.  However, the period from January 3, 2002, to February 13, 2002, a total of 41 days, is attributable to the State as the record demonstrates that the continuance was on the State's motion.

On February 13, 2002, defense counsel filed a motion for continuance as a result of obligations with respect to another case.  At the hearing on the motion, defendant stated that his "speedy trial has been running in this case" and expressed opposition to any continuance.  Defendant informed the court that he asked his public defender about being represented by another attorney from her office if she was unavailable and that he was "ready today to proceed with or without the Public Defender's Office."  The State noted that defendant had not previously made a speedy-trial demand and asked defendant whether he was then making such a demand.  The court then told defendant that he "can put whatever motion [he] wish[es] in writing," but that it was granting defense counsel's motion and continuing the cause to March 20, 2002.  The court also informed defendant that the delay was attributable to the defense.  Defendant replied, "I make the demand today," and he filed a 
written demand for speedy trial.  The delay from February 13, 2002, to March 20, 2002, is attributable to defendant for although defendant filed a speedy-trial demand on February 13, the continuance was on a defense motion.  Defendant's trial commenced on March 20, 2002.

I
n sum, our examination of the record reveals that defendant was brought to trial within 78 days, well within the 120-day statutory limit.   
Because no violation of defendant's right to a speedy trial occurred, raising this issue in a posttrial motion would have been futile, and defendant cannot base a claim of ineffective assistance of counsel on his attorney's failure to file such a motion.  Moreover, our finding that no speedy-trial violation occurred obviates the need for a discussion that defense counsel's failure to raise this issue in defendant's posttrial motion constituted plain error.

For the foregoing reasons, 
the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

BYRNE and KAPALA, JJ., concur.