(No. 55063.—

THE PEOPLE *ex rel.* GERALD ROBERTS, Petitioner, v. MICHAEL ORENIC, Respondent.

*Opinion filed December 18, 1981.*

Jeffrey H. Haas and Jonathan C. Moore, of Chicago, for petitioner.

Tyrone C. Fahner, Attorney General, of Springfield, (Herbert Lee Caplan, Melbourne A. Noel, Jr., Michael B. Weinstein, and Carolyn B. Notkoff, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE RYAN delivered the opinion of the court:

This is an original *mandamus* action, which we permitted the petitioner, Gerald Roberts, to file in this court, pursuant to the prayer of his motion filed under our Rule 381. (73 Ill. 2d R. 381.) Petitioner seeks to prevent his retrial following the declaration of mistrial in a criminal case in the circuit court of Will County. We deny the prayer of the petition for writ of *mandamus.*

The petitioner was charged, by information, with attempted murder, armed violence, aggravated battery, and possession of marijuana. Specifically, it was alleged that he attempted to kill an undercover narcotics agent. The petitioner, Roberts, testified that the agent came to the door of his apartment that night dressed in civilian clothes and that the agent resembled a person who had robbed Roberts six days before. Roberts said that he was armed because of this previous incident and when he went toward his door, he saw the agent draw his gun. Roberts then ducked to avoid being shot. As he did so, he slipped and his gun fired accidentally.

The defendant tendered two jury instructions on self-defense during the jury instructions conference. The prosecution objected to instructing the jury on self-defense because the defendant had testified that the shooting was accidental. The trial court agreed with the prosecution and refused to give the tendered instructions.

During their deliberations, the jury sent the following

note to the judge:

"If self defense is a factor in a situation, can the charge of attempt murder be affected? And, if so, how?"

During a conference concerning this question, out of the presence of the jury, defendant's counsel again requested that the court instruct the jury on self-defense. The prosecution adhered to its original position that self-defense could not be a factor because the defendant testified that the shooting was accidental. The court again refused to give a self-defense instruction; however, in view of the jury's inquiry, the judge indicated that he thought that a self-defense instruction should have been given. There was a lengthy discussion between the defense counsel, the prosecutor, and the court concerning whether self-defense was an issue in the case. Although the court felt that a self-defense instruction should have been given, it refused to give such an instruction at that time, since counsel had not had an opportunity to argue that question to the jury. The court then posed two questions: "Could I give an instruction on self-defense? Would I have to go to a mistrial right now?" Defense counsel replied: "It is a good question." The prosecutor stated: "I think you would have to go to a mistrial, because we have all done our arguments." There followed another lengthy discussion on whether a self-defense instruction was required under the facts of the case. Finally, the bailiff informed the judge that the foreman of the jury told him that he wanted an answer to the question. The court then asked defense counsel if he wanted to make a motion for a mistrial. His response was that his first motion would be to give the jury the self-defense instruction. The judge said he could not do so at that time. The following exchange then took place:

"MR. HAAS [Defense Counsel]: Judge, I think the defendant's position, we would move to dismiss with prejudice and if that is not allowed, we would move for a mistrial.

THE COURT: I am not going to dismiss it with prejudice.

\* \* \*

MR. LIVAS [Prosecutor]: Yes. I understood that the defendant made a motion for mistrial?

THE COURT: Yes. They made a motion before that, they wanted a mistrial with prejudice. I denied that motion.

MR. LIVAS: We agree.

THE COURT: Fine.

MR. HAAS: Our first motion, Judge, was to give the instructions.

THE COURT: Yes. I have come to the conclusion that there is no way \*\*\* I could allow that, to put instructions in that have not been argued, that have not been, you know, explained or argued to the jury at the time the other instructions went in. I think that is improper.

\*\*\* So, okay, I am going to instruct them.

MR. LIVAS: Mistrial?

THE COURT: Mistrial."

The court, apparently in dictating the minutes to the clerk, then stated:

"You can show on the minutes \*\*\* that \*\*\* the Court came to the conclusion that the self defense instruction probably should have been given. Show that the defense moved at that time that the instruction be given \*\*\*. That was denied \*\*\*.

\* \* \*

Defendant at that time moved for a dismissal with prejudice. I denied that. At which time the defense moved for a mistrial. That was concurred in by the People and I am allowing that motion. Bring the jury in.

MR. HAAS: Judge, we think also the mistrial should really be on the Court's motion, since we don't think we were the cause of the mistrial."

The judge never responded to the defense counsel's last

statement. The jury was brought in and the court declared a mistrial.

Thereafter, the petitioner moved for a substitution of judge and the case was referred to Judge Michael Orenic, respondent herein. The petitioner then moved to bar retrial alleging double jeopardy. Judge Orenic denied the motion and the petitioner filed the motion for leave to file a petition for an original action of *mandamus* in this court.

We will first consider whether an original petition for *mandamus* is the proper proceeding in which to decide whether a trial court properly denied defendant's double jeopardy claim. The second issue is whether the double jeopardy clauses of the fifth amendment to the United States Constitution and article I, section 10, of the Illinois Constitution bar reprosecution of the defendant under the facts of this case.

This court did not disapprove the present remedy for double jeopardy claims in *People ex rel. Mosley v. Carey* (1979), 74 Ill. 2d 527. In that case this court stated:

"A defendant in an Illinois criminal case who has a meritorious double jeopardy defense is not foreclosed from pretrial correction of a trial judge's erroneous denial of a motion to dismiss. A motion under our Rule 381 (58 Ill. 2d R. 381) for leave to file an original petition for a writ of prohibition, *mandamus,* or perhaps even *habeas corpus,* as may be appropriate, accompanied by suggestions in support of the petition will receive the serious consideration of this court." (*People ex rel. Mosley v. Carey* (1979), 74 Ill. 2d 527, 540.)

The present case falls within the above rule and therefore this is a proper action in light of our decision in *People ex rel. Mosley v. Carey* (1979), 74 Ill. 2d 527.

In this case, since the mistrial was declared after the jury was selected and sworn, jeopardy had attached. This does not, however, necessarily preclude a second trial. The facts of each case must be examined to determine the credibility

of a double jeopardy claim. (*People ex rel. Mosley v. Carey* (1979), 74 Ill. 2d 527.) Since the early case of *United States v. Perez* (1824), 22 U.S. (9 Wheat.) 579, 6 L. Ed. 165, it has been held that whether a defendant may be retried after a mistrial has been declared without the defendant's request depends on whether there was a manifest necessity for the mistrial. (See *United States v. Dinitz* (1976), 424 U.S. 600, 47 L. Ed. 2d 267, 96 S. Ct. 1075.) However, if the mistrial can be said to be attributable to the defendant by virtue of his motion or consent, different considerations apply. *People ex rel. Mosley v. Carey* (1979), 74 Ill. 2d 527.

The standard to be applied in the event the defendant requested a mistrial, or at least consented to one, was stated in *United States v. Jorn* (1971), 400 U.S. 470, 27 L. Ed. 2d 543, 91 S. Ct. 547, and followed by this court in *People ex rel. Mosley v. Carey.* The *Jorn* court stated:

"[W]here circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." *United States v. Jorn* (1971), 400 U.S. 470, 485, 27 L. Ed. 2d 543, 556, 91 S. Ct. 547, 557.

It is clear that the defendant sought, or at least consented to, the mistrial that the trial court declared. Although there was mention of the possibility of the necessity of a mistrial by the court and by the prosecutor during the conference, there was no motion made to that effect until the court, in its colloquy quoted above, asked the defense counsel if he wanted to make a motion for a mistrial. Defense counsel then replied that his first request was to give the self-defense instruction. When the court said he could not do that, defense counsel, as noted above, stated:

"MR. HAAS [Defense Counsel]: Judge, I think the defendant's position, we would move to dismiss with prejudice and *if that is not allowed, we would move*

*for a mistrial."* (Emphasis added.)

The judge then denied the motion to dismiss with prejudice and granted the motion for a mistrial. The defendant never objected to the declaration of a mistrial, other than to state:

> "MR. HAAS: Judge, we think also the mistrial should really be on the Court's motion, since we don't think we were the cause of the mistrial."

This statement neither amounts to a reversal or withdrawal of the defendant's previous request for a mistrial, nor an objection to the entry of a mistrial.

It cannot be said that the judge's or the prosecutor's conduct in the conference coerced defense counsel into moving for a mistrial. In *United States v. Bobo* (5th Cir. 1978), 586 F.2d 355, the mistrial was held to have resulted from the defendant's motion, although there was a substantially stronger suggestion by the trial judge and a greater participation by him in procuring the declaration of a mistrial than in this case. The defense counsel's disclaimer as to the cause of the mistrial does nothing more than state that it was caused by someone other than the defendant, presumably the trial judge, by failing to give the self-defense instruction and the prosecutor by insisting that the instruction not be given.

Many mistrials are requested or consented to by defendants, even though the error or perceived error necessitating the mistrial was that of the prosecutor or the judge. "Such a motion by the defendant is deemed to be a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." *United States v. Scott* (1978), 437 U.S. 82, 93, 57 L. Ed. 2d 65, 76, 98 S. Ct. 2187, 2195.

The major consideration, for double jeopardy purposes, is that "the defendant retain primary control over the course to be followed in the event of such error." (*United States v. Dinitz* (1976), 424 U.S. 600, 609, 47 L. Ed. 2d 267, 275, 96 S. Ct. 1075, 1080.) The defendant, in our judgment, clearly

retained "primary control" over the proceedings. He could have permitted the jury to continue deliberations and to reach a verdict. If the verdict were against him, the defendant, in his post-trial motion, would have had the benefit of the trial judge's acknowledgment in the conference that he should have given the self-defense instruction. The defendant was in a position that if he won, he would have had the benefit of the verdict and would have been acquitted. If he lost, he was assured a new trial. He elected not to let the jury decide his case. When the judge refused to give the requested instruction, instead of letting the case go to verdict, the defendant gave the judge two alternatives: dismiss the case with prejudice or declare a mistrial. We conclude that the declaration of the mistrial "may fairly be said to have been attributable to [the] defendant." *People ex rel. Mosley v. Carey* (1979), 74 Ill. 2d 527, 535.

The holding in *United States v. Jorn* would thus not prevent the retrial of defendant unless it can be said that the circumstances which brought about the defendant's motion for a mistrial were attributable to prosecutorial or judicial overreaching, or bad faith. The fact that the motion was necessitated by prosecutorial or judicial error is not sufficient to preclude retrial. Defendant's final contention therefore is that the mistrial was necessitated by "judicial and prosecutorial overreaching." The basis of this contention is that the prosecution argued against the jury's being instructed on self-defense and that the trial court ruled in favor of the prosecution.

In *United States v. Dinitz* (1976), 424 U.S. 600, 47 L. Ed. 2d 267, 96 S. Ct. 1075, the Court expounded on "judicial or prosecutorial overreaching" as follows:

"It bars retrials where 'bad-faith conduct by judge or prosecutor,' *United States v. Jorn* [(1971), 400 U.S. 470, 485, 27 L. Ed. 2d 543, 556, 91 S. Ct. 547, 557] threatens the '[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford

the prosecution a more favorable opportunity to convict' the defendant." (*United States v. Dinitz* (1976), 424 U.S. 600, 611, 47 L. Ed. 2d 267, 276, 96 S. Ct. 1075, 1081.)

This exposition contemplates error that was "intended to provoke" the mistrial motion or was otherwise "motivated by bad faith or undertaken to harass or prejudice" the petitioner. *Lee v. United States* (1977), 432 U.S. 23, 53 L. Ed. 2d 80, 97 S. Ct. 2141; *United States v. DiFrancesco* (1980), 449 U.S. 117, 66 L. Ed. 2d 328, 101 S. Ct. 426; *United States v. Leppo* (3d Cir. 1981), 641 F.2d 149, 152-53.

The prosecutor's position that self-defense was not a factor in this case cannot be characterized as "prosecutorial overreaching." The prosecutor was merely an advocate for his position that an instruction on self-defense was improper because the defendant testified that the shooting was accidental. The prosecution adhered to this position throughout the trial.

The defendant also contends that the trial judge was guilty of "overreaching" because of his original refusal to give the self-defense instruction and his latter refusal to give the instruction in response to the jury's inquiry. It is unnecessary for us to determine whether a self-defense instruction should have been given in this case. Assuming, however, that it was error to refuse such an instruction, this error does not amount to judicial "overreaching." Mere error by a trial court does not amount to "judicial overreaching" so as to bar the reprosecution of a defendant who has requested a mistrial. (*United States v. Dinitz* (1976), 424 U.S. 600, 47 L. Ed. 2d 267, 96 S. Ct. 1075; *Mitchell v. Smith* (2d Cir. 1980), 633 F.2d 1009.) Nothing in this case indicates that the judge's conduct was motivated by anything other than sincere concern over his failure to have instructed the jury on the self-defense issue. He certainly did not act with the "intent to provoke" a mistrial motion by the defendant or in "bad faith so as to harass the defendant." We view the

512

conduct of the trial judge as nothing more than an acknowledgment of what he thought was trial error.

For the above reasons we deny the petition for a writ of *mandamus*.

*Write denied.*