THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD A. HILL, Defendant-Appellant.

Fourth District   No. 4—04—0176

Opinion filed December 10, 2004.

COOK, P.J., dissenting.

Charles M. Schiedel and Duane E. Schuster, both of State Appellate Defender's Office, of Springfield, for appellant.

Scott Rueter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J.

Biderman, and Thomas R. Dodegge, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In October 2003, the State charged defendant, Ronald A. Hill, with (1) armed robbery (720 ILCS 5/18—2(a) (West 2002)); (2) possession of a stolen firearm (720 ILCS 5/16—16(a) (West 2002)), (3) reckless discharge of a firearm (720 ILCS 5/24—1.5 (West 2002)), (4) aggravated unlawful use of a weapon (720 ILCS 5/24—1.6(a)(3)(A) (West 2002)), (5) resisting a peace officer (720 ILCS 5/31—1 (West 2002)), and (6) battery (720 ILCS 5/12—3(a)(1) (West 2002)). These charges arose out of the State's allegation that around 4 a.m. on October 18, 2003, defendant forced his way into a Decatur bar, displayed a gun, demanded money, fired a shot into the ceiling, and took money from a bar patron.

During the State's case in chief at defendant's January 2004 jury trial, the prosecutor moved for a mistrial after he learned that some of the State's witnesses had committed perjury. The trial court discussed the motion with both counsel, granted it, and declared a mistrial.

In February 2004, defendant filed a motion to dismiss the charges against him, arguing that his reprosecution was barred by double jeopardy. Following a hearing later that month, the trial court denied defendant's motion.

Defendant appeals, arguing that the trial court erred by denying his motion to dismiss the charges against him on double-jeopardy grounds because (1) he did not consent to the mistrial and (2) no manifest necessity existed for a mistrial. Because we disagree with defendant's first argument, we affirm.

I. BACKGROUND

At defendant's January 2004 jury trial, three State witnesses testified regarding who was present at the bar when the armed robbery occurred. A fourth State witness, John Moran, then testified that in addition to the six individuals the previous witnesses had identified, a man named "Matt" was present.

Before testimony began the next morning, the prosecutor informed the trial court and defense counsel that the first time he had heard that Matt was present during the incident was during Moran's testimony the previous day. The prosecutor explained that after Moran testified, the prosecutor had a discussion with all of the State's witnesses regarding Matt's identity. The witnesses conceded that Matt was present at the time of the incident but had left the bar prior to the arrival of the police. During the discussion, one of the witnesses said to Moran, "I thought we were going to leave [Matt] out of this."

That witness also conceded that although he had testified that he used his cellular phone to call police, he had in fact used a cellular phone provided by Matt. Matt's name did not appear in any of the police reports. Based on that discussion, the prosecutor believed that he was obligated to inform the court that some of the State's witnesses had committed perjury. He thus moved for a mistrial.

Defense counsel responded as follows:

"First, I commend [the prosecutor] for his ethics and calling this to the [c]ourt['s] and my attention and second, Your Honor, that may well be the only course that's available. We certainly can't let the jury rely on perjured testimony, but I'd like about [10] minutes to see if Westlaw gives me any guidance. I've been practicing since [19]75, and I've never had a situation occur where either I or the State, in fact, knew that we've had perjured testimony."

The trial court then inquired of counsel whether the first three State witnesses could be recalled to explain why they had lied and thus "save the trial." The prosecutor stated that he would need time to locate Matt and conduct additional investigation. The court then made the following statement:

"The question is going to be after you make your motion for mistrial, if I grant it, there's no question the defendant is going to file a [m]otion to [d]ismiss on the grounds that the [State] caused the mistrial. Now, I think maybe the cases say it depends if it was willful or not willful, but I'm thinking about what's coming down the line."

The prosecutor responded, in pertinent part, that he anticipated defendant's filing of a motion to dismiss based on the State's having caused the mistrial. The conversation then turned to the question of what to tell the jury, and the court granted the State's motion for a mistrial. The trial court's January 22, 2004, docket entry states, in pertinent part, as follows: "Motion by the [State] for a mistrial, no objection by the [d]efendant, motion allowed."

In February 2004, defendant filed a motion to dismiss the charges against him, alleging that double-jeopardy principles barred his reprosecution. Specifically, defendant argued that the trial court had erred by granting the State's motion for a mistrial because no manifest necessity existed.

At the February 2004 hearing on defendant's motion to dismiss, the trial court and counsel reviewed the transcript of the January 22, 2004, proceeding, in which the State moved for a mistrial. Defense counsel acknowledged that the record did not show an objection to the court's granting a mistrial, but he did not believe that his silence "was tantamount to no objection or an acquiescence to it," especially in

light of his having requested an opportunity to research the issue. The State argued that under *People v. Segoviano*, 189 Ill. 2d 228, 725 N.E.2d 1275 (2000), defendant's failure to object to the mistrial constituted acquiescence such that his reprosecution would not be barred by double jeopardy. The trial court agreed with the State, found that double jeopardy did not bar reprosecution, and denied defendant's motion to dismiss the charges against him.

This appeal followed.

## II. ANALYSIS

### A. Standard of Review

Defendant first argues that we should review *de novo* both the trial court's denial of his motion to dismiss the charges against him and its underlying determination that defendant consented to the mistrial. The State responds that the court's determination should be reviewed under a deferential standard. We agree with the State.

■ Initially, we note that jeopardy had obviously attached in this case. See *People v. Camden*, 115 Ill. 2d 369, 376, 504 N.E.2d 96, 99 (1987) ("[s]ince the trial judge declared the mistrial after the jury had been selected and sworn, there is no question that jeopardy had attached"); 720 ILCS 5/3—4(a)(3) (West 2000) (reprosecution for the same crime is barred if the first trial "[w]as terminated improperly after the jury was impaneled and sworn"). However, reprosecution of a defendant following the declaration of a mistrial is constitutionally permissible if (1) the mistrial was attributable to the defendant by virtue of his motion or consent (*Camden*, 115 Ill. 2d at 376-77, 504 N.E.2d at 99) or (2) the mistrial was warranted by "manifest necessity" (*People ex rel. Roberts v. Orenic*, 88 Ill. 2d 502, 508, 431 N.E.2d 353, 356 (1981)).

In *People v. Campos*, 349 Ill. App. 3d 172, 175, 812 N.E.2d 16, 20 (2004), the Second District held that abuse of discretion was the proper standard for reviewing the trial court's denial of the defendant's motion to dismiss the charges against him on the ground that the State intentionally provoked a mistrial. In so holding, the Second District acknowledged that although "generally, *** review is *de novo* when a constitutional right is at stake" (*Campos*, 349 Ill. App. 3d at 174, 812 N.E.2d at 19), that is not always the case, and wrote as follows:

"[W]hen a defendant has filed a motion to dismiss on double[-] jeopardy grounds, arguing that the prosecutor goaded him into moving for a mistrial, reviewing courts have declined to reverse the trial court's ruling on the motion absent an abuse of discretion. This court has held that the proper standard of review in a case such as the one before us is 'whether the trial court abused its

discretion in denying defendant's motion to dismiss based upon its finding that the State did not intend to provoke a mistrial.' " *Campos*, 349 Ill. App. 3d at 175, 812 N.E.2d at 19, quoting *People v. Wilson*, 309 Ill. App. 3d 235, 242, 722 N.E.2d 315, 321 (1999).

The *Campos* court further explained that when determining whether the prosecution provoked a mistrial, the key issue is the intent of the prosecutor, and the trial court is in the best position to assess the prosecutor's credibility. *Campos*, 349 Ill. App. 3d at 175, 812 N.E.2d at 19. Accordingly, the court held that a trial court's factual determination on that issue will not be overturned unless it is against the manifest weight of the evidence. *Campos*, 349 Ill. App. 3d at 175, 812 N.E.2d at 20.

The *Campos* court's analysis is sound and applicable to the case before us. Just as the trial court is in the best position to evaluate whether the prosecutor intentionally provoked a mistrial, that court is also best situated to evaluate the conduct of the attorneys before it and determine whether defense counsel consented to a mistrial. We thus will defer to the trial court's determination on that matter unless it is against the manifest weight of the evidence.

■ We further agree with the *Campos* court's holding that abuse of discretion is the appropriate standard for reviewing a trial court's ultimate ruling on a motion to dismiss charges on double-jeopardy grounds. We find further support for this holding in *Segoviano*, in which the Supreme Court of Illinois applied an abuse-of-discretion standard when reviewing a trial court's grant of a mistrial based on manifest necessity. *Segoviano*, 189 Ill. 2d at 241, 725 N.E.2d at 1281. In *Segoviano*, our supreme court recognized that declaring a mistrial based on a finding of manifest necessity is a "drastic" measure " ' "[w]here for reasons deemed compelling by the trial judge, *who is best situated intelligently to make such a decision*, the ends of substantial justice cannot be attained without discontinuing the trial." ' " (Emphasis added.) *Segoviano*, 189 Ill. 2d at 241, 725 N.E.2d at 1281, quoting *People v. Chaffin*, 49 Ill. 2d 356, 362, 274 N.E.2d 68, 71 (1971), quoting *Gori v. United States*, 367 U.S. 364, 368, 6 L. Ed. 2d 901, 904, 81 S. Ct. 1523, 1526 (1961). The *Segoviano* court further explained as follows:

> "The trial court's evaluation of whether this threshold has been reached is reviewed only for abuse of discretion [citations], and must be afforded the 'highest degree of respect,' as the trial court 'is far more "conversant with the factors relevant to the determination" than any reviewing court can possibly be.' " *Segoviano*, 189 Ill. 2d at 241, 725 N.E.2d at 1281, quoting *Arizona v. Washington*, 434 U.S. 497, 511, 514, 54 L. Ed. 2d 717, 732, 733, 98 S. Ct. 824,

833, 834 (1978), quoting *Wade v. Hunter*, 336 U.S. 684, 689, 93 L. Ed. 974, 978, 69 S. Ct. 834, 837 (1949). See also *People v. Largent*, 337 Ill. App. 3d 835, 839, 786 N.E.2d 1102, 1106 (2003) (applying the abuse-of-discretion standard of review to the trial court's decision that a mistrial was warranted by manifest necessity).

B. The Trial Court's Denial of Defendant's Motion To Dismiss

Defendant next argues that the trial court erred by denying his motion to dismiss the charges against him because he did not consent to a mistrial. We disagree.

As previously discussed, we will not reverse the trial court's finding that defendant consented to the mistrial unless it was against the manifest weight of the evidence, meaning that all reasonable and unbiased persons would agree that the evidence clearly points to the opposite finding (*People v. Schmitt*, 346 Ill. App. 3d 1148, 1151, 806 N.E.2d 1257, 1260 (2004)). We review the trial court's ultimate denial of defendant's motion to dismiss under an abuse-of-discretion standard. "A trial court abuses its discretion when it makes a decision that is 'clearly against logic.' " *Largent*, 337 Ill. App. 3d at 839, 786 N.E.2d at 1106, quoting *Bodine Electric of Champaign v. City of Champaign*, 305 Ill. App. 3d 431, 435, 711 N.E.2d 471, 474 (1999).

In *Camden*, 115 Ill. 2d at 378-79, 504 N.E.2d at 100, the Supreme Court of Illinois concluded that the defendant's silence and failure to object to the trial court's declaration of a mistrial (despite having an adequate opportunity to do so) evinced the defendant's "acquiescence" to the mistrial. The supreme court then held that the defendant's acquiescence constituted implicit consent. The court thus further concluded that the defendant's reprosecution was not barred by double jeopardy. *Camden*, 115 Ill. 2d at 378-79, 504 N.E.2d at 100.

■ In this case, as in *Camden*, the record shows that defense counsel had an adequate opportunity to object to the mistrial but failed to do so. Defendant suggests that defense counsel's request for an opportunity to research the law on perjured testimony should be construed as an objection to the mistrial. We are not persuaded. After defense counsel made his request for time to research the matter, the discussion continued, and defense counsel, though present, neither reiterated his request for an opportunity to research the law nor made any objection to the action the trial court decided to take.

Reviewing the record under the appropriate standard of review, we conclude that the trial court's finding that defendant had acquiesced to the mistrial was not against the manifest weight of the evidence. Moreover, as the supreme court held in *Camden*, acquies-

cence constitutes implicit consent to a mistrial and precludes a later double-jeopardy claim. *Camden,* 115 Ill. 2d at 378-79, 504 N.E.2d at 100. We further conclude that the trial court did not abuse its discretion by denying defendant's motion to dismiss the charges against him.

We find additional support for our conclusion in the development of the law on the statutory right to a speedy trial. Prior to a 1999 amendment to section 103—5 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/103—5(a) (West 1996)), a criminal defendant's silence did not constitute agreement to a trial delay or waiver of his speedy-trial right. *People v. Reimolds,* 92 Ill. 2d 101, 106, 440 N.E.2d 872, 875 (1982). However, in 1999, the General Assembly amended section 103—5(a) of the Code to provide as follows: "Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record." Pub. Act 90—705, § 5, eff. January 1, 1999 (1998 Ill. Law 3671, 3672) (amending 725 ILCS 5/103—5(a) (West 1996)).

The amendment to section 103—5 of the Code evinces the intent of the policymakers of this state to require some affirmative action on the defendant's part to preserve the right to seek dismissal of the criminal charges against him on speedy-trial grounds. Similarly, in the double-jeopardy context, a defendant should not be allowed to (1) fail to state his objection to a mistrial while the trial court and counsel discuss whether one should be declared and (2) later argue that the charges must be dismissed because the defendant did not consent to the mistrial. To hold otherwise would have the effect of encouraging defendants to conduct themselves in an ambiguous manner when the trial court is considering declaring a mistrial.

We conclude that looking to section 103—5 of the Code for guidance is appropriate because of the following similarities that are present when a defendant seeks (1) dismissal under that section (on the one hand) and (2) to bar further prosecution due to double jeopardy (on the other hand): (1) if a defendant succeeds under either effort, he can never be prosecuted for the crime he allegedly committed; and (2) this bar of further prosecution has nothing to do with the facts of the case and is present even if the proof of the defendant's guilt is overwhelming. Thus, as a matter of sound policy, a defendant wishing to avail himself of these extraordinary protections should be required (at a minimum) to make clear his intent to do so. In the mistrial context, that requires a defendant to state his clear objection on the record, a requirement we view as minimally burdensome.

Having concluded that (1) the trial court's finding that defendant consented to the mistrial was not against the manifest weight of the

evidence and (2) the court did not abuse its discretion by denying defendant's motion to dismiss the charges against him, we need not address defendant's argument that the trial court erred by denying his motion to dismiss because no manifest necessity existed for a mistrial. See *Camden*, 115 Ill. 2d at 379, 504 N.E.2d at 100.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's ruling.

Affirmed.

APPLETON, J., concurs.

PRESIDING JUSTICE COOK, dissenting:

I respectfully dissent and would reverse the decision of the trial court. This case bears little resemblance to *Camden*, where there was a problem with a juror, or to *Segoviano*, where the motion for mistrial was denied.

A defendant has a " ' "valued right to have his trial completed by a particular tribunal." ' " *Largent*, 337 Ill. App. 3d at 842, 786 N.E.2d at 1108, quoting *Washington*, 434 U.S. at 503, 54 L. Ed. 2d at 727, 98 S. Ct. at 829, quoting *Wade*, 336 U.S. at 689, 93 L. Ed. at 978, 69 S. Ct. at 837. Once the defendant has been put in jeopardy, the trial court may not declare a mistrial without the defendant's consent unless there is a "manifest necessity" to do so or the ends of public justice would otherwise be defeated. *Largent*, 337 Ill. App. 3d at 840, 786 N.E.2d at 1107.

The question of double jeopardy following a mistrial arises in a number of very different contexts. For example, the prosecution may move for mistrial because of defense counsel's improper and prejudicial comments in opening statement. In that situation, there may be a second prosecution even if the defendant objects to the mistrial because there was a "manifest necessity" for the mistrial. On the other hand, defense counsel may move for mistrial because of the prosecutor's improper and prejudicial actions in the case. In that situation, double-jeopardy principles may bar reprosecution because defense counsel was "goaded" into making the motion for mistrial. In that second situation, even if the prosecutor moves for mistrial and defense counsel does not object, the controlling feature may still be the conduct of the prosecution. Defense counsel may be "goaded" into failing to object, just as defense counsel may be "goaded" into moving for a mistrial. Defense counsel is not required to choose between proceeding with an unfair trial and allowing a second prosecution.

Why would a defendant ever consent to a mistrial, knowing that a second prosecution would follow? "In the event of severely prejudicial error a defendant might well consider an immediate new trial a preferable alternative to the prospect of a probable conviction followed by an appeal, a reversal of the conviction, and a later retrial." *United States v. Dinitz*, 424 U.S. 600, 610, 47 L. Ed. 2d 267, 275, 96 S. Ct. 1075, 1081 (1976); see 5 W. LaFave, J. Israel & N. King, Criminal Procedure § 25.2(a), at 649-50 (2d ed. 1999). Likewise, the trial court, recognizing that prejudicial error has been committed, may choose to grant a retrial rather than go through the needless process of conviction, reversal, and retrial. *Illinois v. Somerville*, 410 U.S. 458, 464, 35 L. Ed. 2d 425, 431, 93 S. Ct. 1066, 1070 (1973). The situation is different, however, where the prosecution's error, such as the failure to subpoena a witness, makes acquittal probable. Why would defense counsel ever agree to a mistrial when it is likely the present tribunal will acquit?

I disagree with the majority's analysis that a defendant forfeits his rights under the double-jeopardy clause unless he makes a demand for them, similar to a demand for a speedy trial. The issue here is not forfeiture but consent. A defendant's consent may be implicit, but there must in fact be a consent. A defendant's silence cannot amount to consent where the defendant is given no opportunity to object or where the court expresses an intent to grant the mistrial in any event. *United States v. Jorn*, 400 U.S. 470, 484, 27 L. Ed. 2d 543, 556, 91 S. Ct. 547, 557 (1971) (trial court acted so abruptly that parties were given no opportunity to object).

When the mistrial was granted here, the parties were uncertain what the consequences would be. Defense counsel stated that he had never experienced such a situation and asked for time to do some research. The prosecutor stated that he anticipated a motion to dismiss based on the State causing the mistrial when he made the motion, but he decided that "the truth was the only way to go." The trial court recognized there was a possibility the case would have to be dismissed and "maybe the cases say it depends if it was willful or not willful." The dialogue was between the trial court and the prosecutor and focused on the question whether the prosecution really wanted to go this route. No one recognized that defendant had any choice in the matter, and defendant was never asked whether he had any objection to the mistrial.

This is a difficult case. Where a prosecutor, even acting in good faith, has failed to subpoena necessary witnesses, there is no "manifest necessity" that will justify a mistrial. See *Downum v. United States*, 372 U.S. 734, 10 L. Ed. 2d 100, 83 S. Ct. 1033 (1963). The mistrial in *Downum* "operated as a post-jeopardy continuance to allow the

970

prosecution an opportunity to strengthen its case." *Somerville*, 410 U.S. at 469, 35 L. Ed. 2d at 434, 93 S. Ct. at 1073. The "strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence." *Washington*, 434 U.S. at 508, 54 L. Ed. 2d at 730, 98 S. Ct. at 832. That is the situation here. Because of the perjury of the prosecution witnesses, the prosecutor was unaware of the witness "Matt." When the trial court attempted to "save the trial," the prosecutor stated that he would need time to locate Matt and conduct additional investigation. The mistrial here operated as a postjeopardy continuance to allow the prosecution an opportunity to strengthen its case.